IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH J. REDMAN,         )<br>          Plaintiff,     )<br>                          )<br>     v.                   )<br>                          )<br>                          )<br>COMMISSIONER OF SOCIAL    )<br>SECURITY,                 )<br>          Defendant.     ) | 2:09-CV-575 |

MEMORANDUM AND ORDER

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion for summary judgment (Docket No. 9) will be denied; the defendant's motion for summary judgment (Docket No. 11) will be granted; the determination of the Commissioner will be affirmed and judgment entered accordingly.

On May 11, 2009, Ralph J. Redman, by his counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On February 20, 2004, the plaintiff filed an application for disability benefits alleging that he had been disabled since September 28, 1999 (R.54-57), and benefits were denied on March 29, 2004 (R. 38-42). On April 13, 2004, the plaintiff requested a hearing (R.43) and pursuant to that request a hearing was held on March 9, 2005 (R.431-455). In a decision dated

March 18, 2005, benefits were denied (R.12-24), and on April 18, 2005, reconsideration was requested (R.11).  Upon reconsideration and in a decision dated October 15, 2005, the Appeals Council  affirmed the prior determination (R.7-10)  An appeal was filed in this Court at 2:05-cv-1687 and on July 28, 2006, judgment was entered against the plaintiff.

The plaintiff filed a second application for disability benefits on July 21, 2006 (R.520-522) and benefits were denied on Aug 23, 2006 (R.490-493). The plaintiff requested a hearing on November 14, 2006 (R.494) and pursuant to that request a hearing was conducted on January 29, 2008 (R.778-815). On April 1, 2008 benefits were denied (R.461-472) and on March 12, 2008, the Appeals Council affirmed the denial of benefits (R.11). On May 11, 2009,  the instant complaint was filed.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v.  Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel,

186 F.3d 422 (3d Cir. 1999). However, the relevant period of inquiry in the instant case is the time period from March 19, 2005 through June 30, 2005, when the plaintiff was last insured under the Act (R.472). That is, in order to be entitled to benefits, the plaintiff must demonstrate that his total disability occurred during that time period.

At the hearing held on January 29, 2008, (R. 778-815), the plaintiff appeared with counsel (R.784) who acknowledged that in order to prevail, the plaintiff had to demonstrate that he became disabled during the period of March 19, 2005 through June 30, 2005.

At that hearing the plaintiff testified that he was born on January 13, 1960 (R.787); that he graduated from high school and completed one semester of college (R.789) and that he worked as a warehouseman from 1988 through 1999 when he was injured at work (R.790-791).

The plaintiff also testified that he sustained a back injury at work in 1999; that he had back surgery performed in 2001; that he also experiences knee and foot problems (R.793, 797); that his back pain is continuous and radiates to his legs (R 799-800); that he also experiences balance and breathing problems (R.801, 802); that he takes medication for pain (R.794); that he can sit for about twenty minutes and lift about ten pounds (R. 798) and that he does not perform any household chores (R.803).

At the hearing a vocational expert was also called upon to testify (R.805-814). The witness characterized the plaintiff's past work as medium unskilled labor (R.806). If the plaintiff was limited to light work, the witness testified that he could not perform his prior work (R.807). However, the witness also testified that if the plaintiff could perform sedentary work, then there was a wide range of employment in which he could engage (R.812). But, if the plaintiff's

testimony was totally credited, the witness testified there was no form of gainful employ in which he could engage (R.813-814).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act during the time period from March 19, 2005 through June 30, 2005.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. Section 423(d)(3).  These provisions are also applied for purposes of establishing a period of disability.  42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was awarded workers' compensation settlement benefits on February 9, 2004 as a result of a November 29, 1996 work injury (R.58-95).

In a report of a medical evaluation conducted on November 29, 1998, Dr. John B. Talbott diagnosed bilateral lumbar radiculopathy and concluded that the plaintiff could not return to his pre-injury work without restrictions. It was noted that the plaintiff could stand, walk or drive for up to two hours, sit for up to four hours, frequently lift up to ten pounds and occasionally lift up to twenty-five pounds (R.155-158).

The plaintiff was certified by Dr. Richard Aliotto as able to return to work on July 27, 1997 following treatment of his right foot (R.580).

In a treatment note dated August 3, 1999, Dr. Allan H. Tissenbaum noted foot and ankle problems over many years (R.581).

The plaintiff was treated by Dr. V.P. Singh on September 7, 1999 at which time a diagnosis of slight spondylitic changes with osterphytosis at L2-3 was made (R.151-154).

On September 28, 1999, Dr. Shobha Asthana recommended physical therapy for continuing leg pain (R.582).

The plaintiff was hospitalized at Mercy Hospital from January 3, 2001 through January 5, 2001 for a herniated lumbar disc. A left hemilaminectomy was performed (R.159-161, 583-639).

The plaintiff had lumbar epidural blocks administered on September 12, 2001 and November 1, 2001 (R.162-172).

The plaintiff received out-patient epidural blocks at Monongahela Valley Hospital between July 1, 2001 and January 16, 2002 for back, buttock and leg pain (R.640-662).

The plaintiff was treated for back pain by Dr. Arthur H. Palmer between September 20, 1999 and January 22, 2002.  The doctor concluded that there was not further treatment he could offer for the plaintiff's pain other than prescribing analgesics and exercise (R.173-193).

The plaintiff received physical therapy at the Orthopedic Sports Physical Therapy Associates between October 4, 1999 and July 31, 2002 (R.194-297).

At his deposition on April 17, 2003, Dr. Randall D. Borland testified that he is board certified in physical medicine and rehabilitation; that he had been treating the plaintiff since October 24, 2001; that his diagnosis is non-specific lower back and bilateral leg pain as well as chronic pain syndrome; that he restricted the plaintiff to light duty work with some lifting limitations; that the plaintiff was unable to return to his prior work; that his interpretation of the electromylographic studies appeared to be within normal limits and that the plaintiff suffers from heredity neuropathy (R.298-337).

The plaintiff was treated at Tri Rivers Bone and Joint Medicine and Surgery on August 23, 2001 and November 17, 2003 where continued back pain was noted but it was reported that the plaintiff could engage in medium activity involving standing, walking or sitting

for four to six hours, frequently lifting up to ten pounds and occasionally lifting up to twenty pounds (R.338-354).

The plaintiff was treated at Laurel Physiatry between October 24, 2001 and March 10, 2004, for low back and bilateral leg pain. The plaintiff received medication for pain and was encouraged to participate in physical conditioning. He was also approved for light duty work.

After reviewing the medical evidence and in a residual functional capacity assessment completed on March 23, 2004, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.391-400).

The plaintiff received opthalomoligic treatment between March 3, 2004 and June 18, 2004 for herpes simplex keratitis. Artificial tear drops were prescribed (R.409-422).

The plaintiff was treated for herpes simplex keratitis and nuclear cataracts on June 11, 2004 and June 18, 2004 (R.663-664).

In a report of examinations conducted on June 10, 2004, and December 8, 2004, Dr. Randall D. Borland diagnosed nonspecific chronic low back and bilateral leg pain (R.407-408, 425).

The plaintiff was treated on December 14, 2004 by Dr. Tatiana Liebu for severe back pain (R.423-424).

The plaintiff was last insured for disability purposes on June 30, 2005. Thus he must demonstrate that he became disabled sometime between March 19, 2005, the date of the affirmance of his last denial of benefits and June 30, 2005, the date last insured (R.472).

In a report dated September 27, 2005, Dr. Jack D. Smith noted treatment for left knee pain resulting from degenerative arthritis (R.665-666).

The plaintiff was treated with medication at Laurel Physiatry between October 24, 2001 and December 5, 2005 for chronic low back pain and bilateral leg pain. On March 24, 2003, it was noted that the plaintiff was capable of engaging in light duty work (R.667-703).

The plaintiff was treated by Dr. Tatiana Leibu between March 3, 2004 and July 19, 2006 for severe back, knee and foot pain and the doctor concluded that she believed that the plaintiff should be deemed disabled as of November 29, 1998. She also reported on March 10, 2006 that the plaintiff was capable of performing light duty (R.704-734).

After reviewing the medical evidence and in a residual functional capacity assessment completed on August 14, 2006, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours (R.560-566).

In a report dated August 2, 2007, Dr. Jack D. Smith diagnosed an incompletely rehabilitated sprain and noted some improvement in overall functioning (R.741).

The plaintiff had x-rays taken at Westmoreland Hospital between June 12, 2007 and September 6, 2007 which revealed toe flexion deformities, no acute ankle fractures and tiny fibula fractures (R.757-769).

The plaintiff was treated at the Montgomery Foot and Ankle Center between September 6, 2007 and October 4, 2007 (R.771-772).

The plaintiff was treated by Dr. Tatiana Leibu between March 13, 2006 and October 10, 2007 for left ankle problems as well as back problems (R.742-756).

The plaintiff was treated with medication at Laurel Physiatry between October 24, 2001 and December 5, 2005 for chronic low back pain and bilateral leg pain. On March 24, 2003, it was noted that the plaintiff was capable of engaging in light duty work (R.667-703).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974). As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit--but not the letter--of the Act. That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases. The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the

strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant filed a prior application, which was initially denied on January 15, 2004. An unfavorable decision was issued by [an Administrative Law Judge] on March 18, 2005 [and the denial of benefits was affirmed by this Court].
>
> The undersigned alleges res judicata for the period on and prior to March 18, 2005. The claimant's date last insured is June 30, 2005. Thus, the undersigned finds that the period under review is only for March 19, 2005 ... through June 30, 2005.
>
> * * *
>
> For the period under adjudication, March 19, 2005 through June 30, 2005, the claimant's residuals of post lumbar laminectomy/diskectomy have not resulted in impaired ambulation per section 1.00B2b. The claimant does not have neuroanatomic distribution of pain or severe impingement upon the thecal pain. Thus, under Listing 1.04, the claimant's impairments do not meet or equal this listing ...
>
> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work limited by standing and walking up to 2 hours in an 8 hour workday; sitting 6 out of 8 hours in an 8 hour workday; avoid concentrated exposure to temperature extremes of hot and cold; and occasional climbing, balancing, stooping, kneeling, crouching and crawling as defined ...

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence ...
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment...
>
> I find that the claimant's subjective complaints for the time period under adjudication ... are at best partially credible and fair at best ...
>
> In terms of the claimant's alleged back pain, although the claimant has chronic lower back pain and bilateral leg pain. There is no numbness or parasthesias, despite the claimant occasionally losing his balance. The claimant's gait and posture are normal, except for some intermittent and antalgic pattern on the left. The claimant's strength and lower extremities are intact. Sitting straight leg test showed no radicular signs..
>
> In sum, the above residual functional capacity assessment for sedentary work from the alleged onset date through the date last insured on June 30, 2005 is supported by the objective evidence of record and the claimant's activities of daily living. Specifically, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work limited by standing and walking up to 2 hours in an 8 hour workday; sitting 6 out of 8 hours in an 8 hour workday; avoid concentrated exposure of temperature extremes of hot and cold; and only occasional climbing, balancing, stooping, kneeling, crouching and crawling as defined.
>
> * * *
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate... (R.464-472).

The scope of review here is extremely limited in that in order to be awarded benefits, the plaintiff must demonstrate that he was disabled between March 19, 2005 and June 30, 2005. While the record demonstrates that the plaintiff suffers from back, leg and foot problems, the

record also demonstrates that during that limited time period there is no evidence showing that the plaintiff was not capable of engaging in sedentary work activity. This is supported by both the medical evidence and the plaintiff's own testimony. Accordingly, the decision of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir. 2004). In the instant case, there are no material factual issues in dispute, and it appears as a matter of law that the Commissioner's conclusion is supported by substantial evidence. For this reason, the plaintiff's motion for summary judgment will be denied; the defendant's motion for summary judgment will be granted; the decision of the Commissioner will be affirmed, and judgment will be entered accordingly.

An appropriate Order will be entered.

ORDER

AND NOW, this 2nd day of November, 2009, for the reasons set forth in the foregoing Memorandum, the Plaintiff's Motion for Summary Judgment (Docket No. 9) is denied; the Defendant's Motion for Summary Judgment (Docket No.11) is granted and the decision of the Commissioner is affirmed.

                                                  s/ Robert C. Mitchell
                                                  United States Magistrate Judge